**DEDHAM WATER COMPANY,**
Plaintiff, Appellant,

v.

**CUMBERLAND FARMS DAIRY, INC.,**
et al., Defendants, Appellees.

No. 86–1216.

United States Court of Appeals,
First Circuit.

Heard Sept. 10, 1986.

Decided Nov. 14, 1986.

Thomas F. Holt, Jr., Boston, Mass., with whom Cynthia L. Amara, DiCara, Selig, Sawyer & Holt, Boston, Mass., John R. Cope and Bracewell & Patterson, Houston, Tex., were on brief for appellant.

Ellen M. Mahan, Washington, D.C., with whom F. Henry Habicht, II, Asst. Atty. Gen., Jacques B. Gelin, and Steven M. Jawetz, Washington, D.C., were on brief for U.S., amicus curiae.

Allan Van Gestel, Boston, Mass., with whom Christopher P. Davis and Goodwin, Procter & Hoar, Boston, Mass., were on brief for appellee Cumberland Farms, Inc.

Before CAMPBELL, Chief Judge, ALDRICH and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This case presents the first opportunity for a court of appeals to determine whether a party seeking to recover its response costs under section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607, must comply with the 60–day waiting period prescribed in CERCLA section 112(a), 42 U.S.C. § 9612(a).[1] Also contested as part of this appeal is whether the amended version of section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, which eliminates RCRA's 60–day notice requirement for cases involving hazardous waste violations, applies retroactively to cases initiated before 1984.

### I. Factual Setting.

We begin by presenting the facts as set forth in plaintiff's complaint. Appellant Dedham Water Company ("Dedham Water") is a Massachusetts corporation and public franchisee responsible for supplying drinking water to approximately 40,000 residents in the towns of Dedham and Westwood. Its principal source of public drinking water is the White Lodge Well Field, located on the west bank of the Neponset River. On May 30, 1979, the Massachusetts Department of Environmental Quality Engineering ("DEQE") ordered appellant to remove from service two of the four White Lodge wells due to the presence of high concentrations of volatile organic compounds ("VOCs") in the water drawn from these wells. Following an investigation to determine the source of this contamination, the DEQE discovered that appellee Cumberland Farms, Inc. ("Cumberland Farms")[2] was unlawfully discharging VOCs at its facility on the east bank of the Neponset River, across from the White Lodge field. On March 4, 1982, Dedham Water notified Cumberland Farms of its plan to conduct a hydrogeological study to determine the source and scope of contamination at the White Lodge field and also informed appellee that it was incurring response costs[3] as a result of the contamination. Although Cumberland Farms failed to cooperate with the testing, the hydrogeological study allegedly concluded that Cumberland Farms was indeed a source of contamination of the well field.

On October 8, 1982, following receipt of the results of the hydrogeological study, Dedham Water sent two letters to Cumberland Farms. These letters notified appellee of Dedham Water's intention to file suit under RCRA, 42 U.S.C. §§ 6901–87, and the federal Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1376. The letters did not mention the possibility of legal action pursuant to the provisions of CERCLA, 42 U.S.C. §§ 9601–57. Thirteen days later, on October 21, 1982, Dedham Water filed an action in federal district court seeking injunctive relief, response costs, and damages based on RCRA, CWA, CERCLA, and various Massachusetts statutory and com-

---

1. As we neared completion of this opinion, we learned that Congress has recently amended section 112(a) as part of the "Superfund Amendments and Reauthorization Act of 1986," Pub.L. No. 99–499, 100 Stat. 1613 (1986). Although we confine our analysis to the original statutory language of section 112(a), we are satisfied that the new language and accompanying legislative history support the result we reach today. *See infra* p. 1081 & note 6.

2. The two original defendants, Cumberland Farms Dairy, Inc. and VSH Realty, Inc., were merged into defendant-appellee Cumberland Farms, Inc. on October 1, 1984.

3. "Response costs" are those expenses incurred by a party seeking to remove or otherwise remedy the hazard posed by the released substance. *See* 42 U.S.C. § 9601(23), (24), (25) (defining "remove," "remedy," and "response").

mon law theories of liability. Cumberland Farms responded on November 15, 1982, by filing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), (6), alleging that appellant had failed to comply with the statutory notice requirements contained in all three federal statutes. The district court originally denied this motion, holding that Dedham Water had constructively complied with the relevant notice provisions. *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 588 F.Supp. 515 (D.Mass.1983).

Appellee renewed its motion to dismiss on July 3, 1985, following the announcement of this court's decision in *Garcia v. Cecos International, Inc.*, 761 F.2d 76 (1st Cir.1985). In *Garcia* we held that a plaintiff's failure to comply with RCRA's 60–day notice provision "foreclose[d] the possibility of jurisdiction under RCRA." *Id.* at 83. Relying on *Garcia*, the district court granted appellee's renewed motion, 643 F.Supp. 667. The court ruled that appellant's failure to comply with the 60–day notice requirement deprived it of jurisdiction over the RCRA claim and that the 1984 amendment to RCRA, which eliminated the notice requirement for hazardous waste cases, should not be applied retroactively. It also held that the 60–day pre-claim notice provision contained in CERCLA section

112(a) applied to this case and deprived it of jurisdiction over appellant's CERCLA claim.[4] Accordingly, the district court entered judgment in favor of Cumberland Farms. We reverse.

## II. The CERCLA Claim.

Appellant argues that the district court erred in holding that strict compliance with the 60–day notice provision of CERCLA section 112(a) is a jurisdictional prerequisite to a private action for the recovery of response costs directly from the responsible party under CERCLA section 107.[5] Section 112(a) provides:

All claims which may be asserted against the Fund pursuant to section 111 of this title [42 U.S.C. § 9611] shall be presented in the first instance to the owner, operator, or guarantor of the vessel or facility from which a hazardous substance has been released, if known to the claimant, and to any other person known to the claimant who may be liable under section 107 of this title [42 U.S.C. § 9607]. In any case where the claim has not been satisfied within sixty days of presentation in accordance with this subsection, the claimant may elect to commence an action in court against such owner, operator, guarantor, or other person or to

---

4. The district court also dismissed Dedham Water's CWA claim and pendent state claims. The CWA claim is not before us on appeal. The state claims, however, were dismissed only for lack of federal subject matter jurisdiction. In light of our holding today with respect to appellant's causes of action under CERCLA and RCRA, we also must reverse the decision to dismiss the state claims.

5. CERCLA section 107(a) provides:
Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
(1) the owner or operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazard-

ous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and
(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—
(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and
(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.
42 U.S.C. § 9607(a).

present the claim to the Fund for payment.

42 U.S.C. § 9612(a).[6] Because appellant has not sought reimbursement for its response costs from the Hazardous Substance Response Fund ("Fund" or "Superfund"), it contends that it was under no obligation to provide notice sixty days prior to initiating its CERCLA action. We agree. Although the district courts that have considered this issue have differed in their interpretation of the statute, we believe that appellant's position finds support in the language, structure, legislative history, and purpose of the statute.

**A. Case Law.**

Our research reveals that eleven district courts, including the court below, have attempted to resolve the issue of whether a party seeking to recover its response costs from a party responsible for the release of hazardous substances may bring an action under CERCLA section 107 without providing the 60–days notice required by the claims procedure of CERCLA section 112(a). Demonstrating that this is not an easy question, five courts have held that presuit notice is required, *Walls v. Waste Resources Corp.*, No. 2–83–418, slip op. (E.D.Tenn. March 28, 1986) (report and recommendation of magistrate); *Idaho v. Howmet Turbine Component Corp.*, 627 F.Supp. 1274, 1278 (D.Idaho 1986); *Bulk Distribution Centers, Inc. v. Monsanto Co.*, 589 F.Supp. 1437, 1442 (S.D.Fla.1984); *United States v. Allied Chemical Corp.*, 587 F.Supp. 1205, 1207 (N.D.Cal.1984);

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 588 F.Supp. at 515; and six have held that presuit notice is not required, *see United States v. Dickerson*, 640 F.Supp. 448, 452 (D.Md.1986); *Screen Art, Inc. v. David Witherspoon, Inc.*, No. 3–85–1159, slip op. at 3 (E.D.Tenn. February 24, 1986); *Idaho v. Bunker Hill Co.*, 634 F.Supp. 800, 805 (D.Idaho 1986); *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 209–11 (W.D.Mo.1985); *Colorado v. ASARCO, Inc.*, 616 F.Supp. 822, 825 (D.Colo.1985); *New York v. General Electric Co.*, 592 F.Supp. 291, 300 (N.D.N.Y. 1984). Faced with these two distinct lines of authority in the recent *Bunker Hill* case, Judge Ryan identified the first group as the *"Dedham* line of cases" (recognizing the pivotal status of the 1983 decision of the court below) and the second as the *"General Electric* line of cases." *Bunker Hill*, 634 F.Supp. at 804–05.

For the reasons elaborated below, we agree with Judge Ryan that the *General Electric* line of cases is better reasoned and provides the proper interpretation of CERCLA. We find the *Dedham* line of cases to be characterized by a dearth of cogent analysis. For instance, even though—or perhaps because—no other court had yet faced this issue in 1983, the original published order in the case now before us limited its discussion of the interaction of sections 107 and 112 to a single conclusory sentence.[7] *Dedham Water*, 588 F.Supp. at 517. The district courts in the *Allied Chemical, Bulk Distribution,* and

---

**6.** As mentioned earlier, Congress enacted an amended version of section 112(a) that became law on October 17, 1986. As amended, section 112(a) provides:

(a) CLAIMS AGAINST THE FUND FOR RESPONSE COSTS.—No claim may be asserted against the Fund pursuant to section 111(a) unless such claim is presented in the first instance to the owner, operator, or guarantor of the vessel or facility from which a hazardous substance has been released, if known to the claimant, and to any other person known to the claimant who may be liable under section 107. In any case where the claim has not been satisfied within 60 days of presentation in accordance with this subsection, the claimant may present the claim to the Fund for payment. No claim against the Fund may be approved or certified during the pendency of an action by the claimant in court to recover costs which are the subject of the claim. 42 U.S.C. § 9612(a) (as amended). This amendment is consistent with our holding today that CERCLA plaintiffs should not be required to provide 60–days notice unless bringing a claim against the Fund.

**7.** "Title 42 U.S.C. § 9612 requires parties seeking response costs under § 9607 to make demand for these costs upon the responsible party at least sixty days before commencing suit." *Dedham Water*, 588 F.Supp. at 517.

*Howmet Turbine* cases subsequently adopted the *Dedham* approach because they, too, apparently believed that the language of the statute mandated this result. *See Howmet Turbine,* 627 F.Supp. at 1279; *Bulk Distribution,* 589 F.Supp. at 1448; *Allied Chemical,* 587 F.Supp. at 1207. None of these cases engaged in a careful analysis of the statutory language, nor did any probe the legislative history or congressional purpose underlying CERCLA. The *Walls* case, the most recent addition to the *Dedham* line, goes little further in developing the analysis of this issue. It borrows some conclusory language from the *Howmet Turbine* opinion, purports to analyze the language of section 112(a), and observes that section 107 cannot be totally separate from section 112 because the relevant statute of limitations for some section 107 actions is contained in section 112(d). *Walls,* No. 2–83–418, slip op. at 2–9 (E.D. Tenn. March 28, 1986).[8] In short, we are not persuaded that any of these five decisions provides a compelling analysis of the statutory language. We begin, therefore, by engaging in a precise examination of the language and structure of the relevant CERCLA provisions. *See Isaac v. Harvard University,* 769 F.2d 817, 820 (1st Cir.1985).

**B. Language and Structure.**

CERCLA establishes an array of mechanisms to combat the increasingly serious problem of hazardous substance releases. Section 107 explicitly creates a private right of action against parties responsible for the release of hazardous substances. 42 U.S.C. § 9607(a)(2)(B); *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887,

890 (9th Cir.1986). This right of action permits a private party to recover directly from the responsible party its "costs of response." Section 111, conversely, permits private parties to recover response costs that are consistent with the National Contingency Plan from the Fund, a limited reservoir of monies set aside "for the payment of certain types of private and governmental claims for cost reimbursement and natural resources damages caused by hazardous waste disposal." *United States v. Mottolo,* 605 F.Supp. 898, 902 (D.N.H. 1985). Section 112(a), which immediately follows, establishes the procedures to be followed by parties wishing to assert a claim against the Fund. It is the interaction of sections 107 and 112(a) that we must scrutinize in the context of this appeal.

We begin our analysis of the CERCLA's language and structure by considering and rejecting appellant's broad claim that sections 107 and 112 are entirely independent from each other. The express language of section 107(a) imposes liability on those parties responsible for the release or threatened release of hazardous substances "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section...." 42 U.S.C. § 9607(a). Appellant argues that this prefatory language serves to separate section 107(a) from the remainder of the statute and renders the "claims procedure" provisions of section 112 inapplicable to "private enforcement" actions brought pursuant to section 107. This argument has some facial appeal,[9] especially in light of the limited defenses provided in

---

**8.** We add that the courts in *Walls, Howmet,* and the instant case relied to a considerable extent on the reasoning of the opinion in *Bulk Distribution,* 589 F.Supp. at 1449, which principally relates to the now abandoned requirement that a private party must receive government approval of its clean-up plan *prior* to commencing an action under section 107. *See* 50 Fed.Reg. 47,934 (revising 40 C.F.R. § 300.71) (1985) (government approval of response actions no longer necessary if Fund reimbursement not sought).

**9.** Indeed, more than one district court has relied upon this prefatory language to hold that the procedures enumerated in section 112 do not apply to actions brought under section 107. *See, e.g., Pinole Point Properties, Inc. v. Bethlehem Steel Corp.,* 596 F.Supp. 283, 288–89 (N.D. Cal.1984); *United States v. Reilly Tar & Chemical Corp.,* 546 F.Supp. 1100, 1117–18 (D.Minn. 1982).

section 107(b),[10] but appellee correctly contends that the two sections are not entirely independent. As noted by the *Walls* court and others, section 112(d) does provide a three-year statute of limitations that applies to at least some actions brought pursuant to section 107. 42 U.S.C. § 9612(d); *Mottolo,* 605 F.Supp. at 902. Accordingly, we must examine the specific provisions of section 112(a) to determine their applicability to section 107 actions. *See ASARCO,* 616 F.Supp. at 825.

Unlike section 112(d), which includes an express reference to all *"action[s]"* commenced for damages under this subchapter," section 112(a) refers only to "[a]ll *claims* which may be asserted against the Fund pursuant to section 111 of this title...." 42 U.S.C. § 9612(a), (d) (emphasis supplied). As Judge Devine has recently noted, this distinction between "claims" and "actions" is central to the structure of CERCLA and has been carefully preserved throughout the statute. *See Mottolo,* 605 F.Supp. at 904. A "claim" consistently refers to a demand for reimbursement from the Superfund, except for its first appearance in the second sentence of section 112(a), where it refers more generally "to a pre-claim/pre-action demand to the liable party." *Id.;* 42 U.S.C. §§ 9601(4), 9612(a). An "action," however, refers strictly to judicial proceedings, "whether suits brought by the United States for reimbursement to the Fund, suits brought by governmental and private parties directly against hazardous waste offenders for reimbursement of costs, or suits brought by federal or state governments for damages to natural resources." *Mottolo,* 605 F.Supp. at 904. Because section 112(a) refers exclusively to

section 111 claims,[11] it differs fundamentally from section 112(d), which explicitly applies not only to "claims," but also to judicial actions for damages commenced under section 107(a)(2)(C). Because of this distinction, we need not read the "all claims" language of section 112(a) as necessarily referring to the private judicial actions contemplated by section 107.

Appellant, however, is not out of the woods simply because section 112(a) does not explicitly refer to "actions" brought pursuant to section 107. Appellee stresses the use of the ambiguous word "may" in section 112(a) and argues that appellant, because it is pressing a claim that potentially *could have been* asserted against the Fund under section 111, must strictly comply with the claims procedure and notice requirement set forth in section 112(a). In short, appellee would have us read section 112(a) as establishing a procedure that must be followed by all parties seeking to recover their response costs, regardless of the targeted source of funds. This argument, however, misses the mark. It strains both the language and the structure of the statute to read section 112(a) as establishing anything more than the conditions of eligibility for claims against the Fund. Accordingly, we are persuaded that "the word 'may' refers not to the possibility of a claim against the Fund, but rather, refers to claims which are allowed to be made against the Fund by virtue of Section 111." *Bunker Hill,* 634 F.Supp. at 802; *see also ASARCO,* 616 F.Supp. at 825 (state's natural resource damage claims presented to Fund and rejected by EPA

---

10. To escape liability using "the defenses set forth in subsection (b)," the person otherwise liable must establish by a preponderance of the evidence that the actual or threatened release of the hazardous substance and any resulting damage were caused by: (1) an act of God; (2) an act of war; (3) certain acts and omissions of third parties; or (4) any combination of these three reasons. 42 U.S.C. § 9607(b).

11. Appellee argues that the language of section 112(a) supports its position because a portion of that section states that a claimant "may elect to

commence an action in court" if its demand for payment remains unsatisfied after sixty days. We believe, however, that the insertion of this language simply reaffirms the fact that a claimant does not forfeit his opportunity to sue under section 107 by pursuing the procedure for claims against the Fund set forth in section 112(a). Although a section 107 action *may* be initiated after providing section 112(a) notice, it does not logically follow that a section 107 action *must* be preceded by section 112(a) notice. *See ASARCO,* 616 F.Supp. at 826.

were not claims which "may be asserted against the Fund pursuant to section 111").

As Judge Ryan has perceptively noted in his *Bunker Hill* decision, "[i]f Congress had intended the sixty-day requirement to apply to Section 107 causes of action, it very easily could have included in the first sentence after 'pursuant to section 111,' the clarifying phrase, 'or section 107.'" *Bunker Hill*, 634 F.Supp. at 802. Because Congress refused to take the simple step of inserting such language, and for other reasons elaborated below, we choose not to resolve the ambiguity of the word "may" in a manner that would indicate an affirmative congressional intent to link sections 107 and 112(a). Appellant here has specifically chosen not to seek reimbursement for its costs from the Fund. Its section 107 action, therefore, should not be categorized as a "claim which may be asserted against the Fund." 42 U.S.C. § 9612(a).

## C. Legislative History.

We recognize that "CERCLA has acquired a well-deserved notoriety for vaguely drafted provisions and an indefinite, if not contradictory, legislative history." *Mottolo*, 605 F.Supp. at 902. We also admit that the legislative history of CERCLA provides inconclusive guidance on the issue facing us in this appeal. Nevertheless, because appellee claims support for its reading of the statute in the legislative history, we embark on our analysis of the pertinent legislative sources. We note at the outset, however, that none of five district court decisions cited favorable to appellee's position rely on the legislative history of CERCLA to support their holdings.

CERCLA was the product of a three year congressional effort to address the growing problem of hazardous waste releases and it was enacted as a "last-minute compromise" between three competing bills,

H.R. 7020, H.R. 85, and S. 1480. *Id.* at 905. There is at least some truth in appellee's assertion that the present version of section 112(a) "emerged essentially intact" from section 6(b)(3)(D) of S. 1480, as reported out of the Senate Committee on Environment and Public Works.[12] The brief commentary on this section offered by the Committee stated:

In all instances the claimant is required to first present his claim to the potentially liable person or persons, if known, *prior to pursuing any right under this section.* If the claim is not satisfied, the claimant, or in the case of death, the estate of such person, may then elect either to pursue his remedies in the courts or present his claim to the Fund.

S.Rep. No. 848, 96th Cong., 2d Sess. 81 (1980) (emphasis supplied). Appellee contends that this language supports a reading of section 112(a) that requires private parties seeking direct recovery of response costs by means of judicial action to provide 60-days notice prior to filing suit.

Our own approach to the Committee's commentary, supported by the only two district courts that have explicitly considered the legislative history of CERCLA in the context of resolving this issue, yields a different result. *See Bunker Hill*, 634 F.Supp. at 802; *ASARCO*, 616 F.Supp. at 826. As both the *ASARCO* and *Bunker Hill* courts have aptly noted, the reference to "this section" in the emphasized language above relates to section 6 of the proposed Senate bill. Similar to CERCLA's current section 111, proposed section 6 of S. 1480 was entitled "Use of the Response Fund" and dealt entirely with claims against the Fund. We do not believe, therefore, that this portion of the legislative history supports appellee's reading of section 112(a). To further underscore our point, we note that Congress eventually

---

**12.** The text of section 6(b)(3)(D) provided:

All claims shall be presented in the first instance to the owner, operator, or guarantor of the vessel, or facility from which a hazardous substance has been discharged or released, and to any other person liable under section 4. In any case where the claim has not been satisfied in accordance with this paragraph, the claimant may elect to commence an action in court against such owner, operator, or guarantor or other person or to present the claim for payment from the fund under this section.

enacted a version of section 6(b)(3)(D) that, unlike the original draft, contained specific language limiting its application to claims "which may be asserted against the Fund pursuant to section 111." 42 U.S.C. § 9612(a).

Finally, we find support for our reading of the contemporaneous legislative history of CERCLA in our examination of the conference report that accompanied the recent amendment of section 112(a). H.R.Conf. Rep. No. 962, 99th Cong., 2d Sess. (1986) ("Conference Report"), U.S.Code Cong. & Admin.News 1986, p. ——. The drafters of that document emphatically state that the notice provisions of the original section 112(a) did not apply to private cost recovery actions initiated pursuant to section 107: "Section 112(a) of current law contains a sixty-day presentation requirement relating to the initiation of claims *against the Fund*.... The sixty-day presentation requirement has *never* applied to civil actions,...." Conference Report, *supra*, at 219, U.S.Code Cong. & Admin.News 1986, at ——. (emphasis supplied). Although we realize that congressional hindsight is no substitute for legislative analysis generated during the period immediately preceding the enactment of a bill, we do find the language of the recent conference report to have some force due to the aura of uncertainty that has surrounded this particular portion of the CERCLA scheme. While not dispositive, the language of the conference report certainly casts a distinctive shadow of doubt on appellee's interpretation of the language and legislative history of the original section 112(a).

**D. Congressional Purpose.**

Although CERCLA's legislative history is shrouded with mystery, we believe it is possible to identify two essential purposes that Congress had in mind when designing CERCLA. The court in *United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100 (D.Minn.1982), best expresses these policy concerns:

First, Congress intended that the federal government be immediately given the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous waste disposal. Second, Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created.

*Id.* at 1112. The bifurcated structure of the statute itself, which both establishes the Superfund *and* creates a private right of action against responsible parties, reflects these dual legislative purposes.

CERCLA is essentially a remedial statute designed by Congress to protect and preserve public health and the environment. We are therefore obligated to construe its provisions liberally to avoid frustration of the beneficial legislative purposes. *Mottolo*, 605 F.Supp. at 902; *Conservation Chemical*, 619 F.Supp. at 192. With this in mind, we join the Second Circuit in proclaiming that "[w]e will not interpret section 9607(a) in any way that apparently frustrates the statute's goals, in the absence of a specific congressional intent otherwise." *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1045 (2d Cir.1985). Our interpretation of section 107(a) eliminates a procedural obstacle that would otherwise hamper the efforts of private parties who prefer to initiate judicial cost recovery actions directly against the responsible parties rather than seek reimbursement from the Superfund. This reading of the statute serves both congressional purposes by preserving the limited resources of the Fund and by ensuring that liability will be apportioned among parties responsible for the release of hazardous substances whenever possible.

Appellee contends that the notice provision contained in section 112(a) is an attempt to provide parties with an opportunity to resolve disputes concerning the recovery of response costs without having to resort to lengthy judicial proceedings. It believes that we should interpret the statute in a manner that will advance this goal of promoting early settlement of disputes.

While we agree that early resolution of such disputes is a desirable objective, we cannot accept appellee's construction of the statute on this ground alone. First, the prompt filing of a section 107 cost recovery action may serve to promote settlement to an equal or greater extent than a mandatory notice period during which judicial proceedings may not be commenced. Second, the incorporation of the section 112(a) notice provision in section 107 would run contrary to the overriding purposes of the statute by delaying the recovery of response costs from responsible parties and forcing all parties to qualify their claims for Fund reimbursement before initiating judicial action. It is our belief that the liability provisions of section 107 are an essential part of the structure established by CERCLA because the resources of the Fund alone are simply insufficient to provide an adequate remedy to the national problem of hazardous waste disposal. *Conservation Chemical*, 619 F.Supp. at 207; *General Electric*, 592 F.Supp. at 302. We therefore hold that a party seeking to recover its response costs under 42 U.S.C. § 9607 need not first comply with the 60–day notice period contained in 42 U.S.C. § 9612(a).

### III. The RCRA Claim.

The court below also dismissed Dedham Water's claim for injunctive relief under RCRA due to appellant's failure to provide appellee and EPA with 60–days notice prior to filing suit as required by RCRA section 7002. 42 U.S.C. § 6972. In November, 1984, however, Congress amended the citizen suit provision of RCRA so as to eliminate the 60–day notice requirement for all claims involving hazardous waste management. Appellant now argues that we should apply the 1984 amendments retroactively and permit the district court to retain jurisdiction over its RCRA claim.

### A. The 1984 Amendment.

As amended, the pertinent portion of RCRA's citizen suit provision reads:

(1) No action may be commenced under subsection (a)(1)(A) of this section—

(A) prior to 60 days after the plaintiff has given notice of the violation to—

(i) the Administrator;

(ii) the State in which the alleged violation occurs;

(iii) to [sic] any alleged violator of such permit, standard, regulation, condition, requirement, prohibition, or order,

*except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter; . . . .*

42 U.S.C. § 6972(b)(1)(A) (emphasis supplied). Congress added the emphasized language in 1984 to permit the immediate commencement of private actions alleging violations of the hazardous waste management provisions of RCRA's subchapter III. Prior to the amendment, citizen-plaintiffs with a subchapter III claim had to abide by the 60–day notice requirement and refrain from commencing litigation immediately against an alleged violator.

It is undisputed that appellant filed suit prior to the enactment of the 1984 RCRA amendments; that appellant's complaint alleges violations of subchapter III; and that appellant did provide actual notice to appellee and EPA before commencing its action against appellee. Appellant did not, however, comply with the 60–day notice requirement of section 7002 as it was then in effect. The sole question we must decide with respect to the RCRA claim, therefore, is whether the 1984 amendment should be applied retroactively.

### B. Retroactivity.

In *Garcia v. Cecos International, Inc.,* 761 F.2d at 76, we held that failure to comply with the 60–day notice requirement in section 7002 deprived the district court of subject matter jurisdiction over an action initiated pursuant to the citizen suit provisions of RCRA. Appellee urges us to apply this rule strictly to the facts of this case and affirm the district court's dismissal of Dedham Water's RCRA claim. The rule in this circuit, however, is that "a

court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *New England Power Co. v. United States,* 693 F.2d 239, 244 (1st Cir.1982) (quoting *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974)). We see no reason to ignore this rule simply because the case at bar turns on an issue that we have held to be jurisdictional in nature.[13] *Accord New England Power,* 693 F.2d at 244.

In this case, *after* Dedham Water had filed its complaint, Congress statutorily expanded the jurisdiction of the district courts by permitting them to entertain certain RCRA actions that were not preceded by sixty days notice, as previously required. On more than one occasion, the Supreme Court has also considered actions that were jurisdictionally infirm when filed, yet has found no jurisdictional defect because Congress had enlarged the district court's jurisdiction while the case was pending. *See Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978); *United States v. Alabama,* 362 U.S. 602, 604, 80 S.Ct. 924, 926, 4 L.Ed.2d 982 (1960) (per curiam). The plaintiff in *Andrus,* for instance, sought judicial review of certain adverse administrative decisions taken by the Secretary of the Interior. The original complaint in that case relied solely upon the Administrative Procedure Act ("APA") as the basis for federal jurisdiction because, at the time the complaint was filed in 1973, the federal question jurisdiction statute, 28 U.S.C. § 1331, still contained a $10,000 amount-in-controversy requirement. Although the Supreme Court later held that the APA did not provide an implied grant of subject matter jurisdiction to the federal courts, *Califano v. Sanders,* 430 U.S. 99, 107, 97

S.Ct. 980, 985, 51 L.Ed.2d 192 (1977), the Court found no jurisdictional defect in *Andrus.* Instead, it held that subject matter jurisdiction over the *Andrus* complaint properly existed by virtue of the 1976 amendment to section 1331 that eliminated the amount-in-controversy requirement. *Andrus,* 436 U.S. at 607–08 n. 6, 98 S.Ct. at 2005 n. 6. The Court relied on two previous cases, *Ralpho v. Bell,* 569 F.2d 607, 615–16 n. 51 (D.C.Cir.1977), and *Green v. Philbrook,* 427 F.Supp. 834, 836 (D.Vt. 1977) *rev'd on other grounds,* 576 F.2d 440 (2d Cir.1978), to support its retroactive application of the 1976 amendment. *Andrus,* 436 U.S. at 608 n. 6. Likewise in the *Alabama* case, the Supreme Court ruled that a district court could properly assert jurisdiction over a claim brought against a state pursuant to the Civil Rights Act of 1957, even though the explicit authority for the court's jurisdiction arose after the filing of the complaint as part of the Civil Rights Act of 1960. *Alabama,* 362 U.S. at 604.

One common thread linking *Andrus* and *Alabama* is the fact that in both cases Congress subsequently amended the provisions of a statute that it determined to contain a significant jurisdictional gap. Indeed, the reasoning of the decisions in both *Ralpho* and *Green,* relied upon in *Andrus,* explicitly turned on this factor. As the *Green* court noted, the remedial 1976 amendment was "intended to fill what has been termed 'an unfortunate gap in the statutory jurisdiction of the federal courts....'" *Green,* 427 F.Supp. at 836. The case at bar is no different. In hazardous waste cases arising prior to 1984, a private party could immediately commence legal action against the Administrator of EPA, *but not against the alleged violator. Compare* 42 U.S.C. § 6972(a)(2), (c), *with* 42 U.S.C. § 6972(a)(1), (b). In the course of closing jurisdictional and substantive loop-

---

**13.** Both the decision of the court below and appellee rely on the "elementary principle" advanced in *Gaunce v. deVincentis,* 708 F.2d 1290, 1294 (7th Cir.), *cert. denied,* 464 U.S. 978, 104 S.Ct. 417, 78 L.Ed.2d 354 (1983). This reliance is misplaced because *Gaunce* and other similar authorities stand only for the proposition that jurisdiction must be established by the *facts* as they exist at the time the suit commences. Here only the *law* governing district court jurisdiction, not the *facts* pertaining to that jurisdiction, has changed.

holes in RCRA, Congress remedied this odd lacuna by amending section 7002(b) to include the exception to the notice requirement for subchapter III cases that was already part of section 7002(c). We hold, therefore, that at least where Congress has expanded the jurisdiction of the courts in response to a perceived gap in a statutory jurisdictional scheme, it is proper for us to apply the rule of *New England Power* and *Bradley*.

 The rule that a court must apply the law in effect at the time it renders a decision is not, of course, an absolute mandate. The rule does not apply if it would result in manifest injustice or if there is statutory direction or legislative history directing otherwise. *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016. Because Congress has provided no guidance as to whether the 1984 amendment should apply retroactively or prospectively, we need only consider whether retroactive application would result in manifest injustice. As we have established in *New England Power*, 693 F.2d at 245, and *Adams Nursing Home of Williamstown, Inc. v. Matthews*, 548 F.2d 1077, 1080 (1st Cir.1977), "manifest injustice" will result when the disappointment of private expectations caused by retroactive application will outweigh the public interest in enforcement of the new rule. Here, however, the balance tips substantially in favor of retroactive application. Appellee can hardly claim that retroactive application of the 1984 amendments would significantly disappoint its expectations in the case at bar. As appellant correctly points out, retroactive application of the amendment would not have breathed life into a previously dormant claim because appellee's first motion to dismiss was denied on the theory of "constructive notice."[14] It was only after our 1985 decision in *Garcia*, 761 F.2d at 76, that the court below dismissed the RCRA claim that had been slowly proceeding to trial since late 1982. Indeed, discovery had been completed and the case was on the district court's trial list when it was thrown out of court. Thus, prior to *Garcia*, appellee could not have reasonably relied on the fact that we would refuse to apply the 1984 amendment retroactively. Following our decision in *Garcia*, moreover, appellee suffered no significant detriment even if it justifiably began to rely on the nonretroactivity of the amendment.[15] Finally, appellee's meager reliance pales even further when balanced against the substantial public interest in effectively addressing the growing national problem of hazardous waste, an interest represented by the provisions of RCRA's subchapter III. Accordingly, we conclude that the 1984 amendment to the citizen suit provisions of RCRA must be applied retroactively and that the court below erred in dismissing appellant's original RCRA claim on the basis of section 7002.

## IV. Conclusion.

For the reasons stated above, we hold that the district court improperly dismissed Dedham Water's CERCLA and RCRA claims. The former did not require 60–days notice as provided in 42 U.S.C. § 9612 because it did not involve a "claim which may be asserted against the Fund." The latter did not require appellant to provide 60–days notice because the 1984 amendment to 42 U.S.C. § 6972 applies retroactively to vest the court with subject matter jurisdiction.

*Reversed.*

**14.** Because we had yet to rule on the validity of "constructive notice" in 1982, Dedham Water's complaint, like the complaint at issue in *Andrus*, "appeared jurisdictionally correct when filed." *See Andrus*, 436 U.S. at 608 n. 6, 98 S.Ct. at 2005 n. 6.

**15.** Appellee argues unpersuasively that our decision in *Garcia*, 761 F.2d at 76, and the Sixth

Circuit's opinion in *Walls v. Waste Resource Corp.*, 761 F.2d 311, 315 (6th Cir.1985), implicitly held the 1984 amendment not to be retroactive. In neither case, however, was the issue of retroactivity briefed or argued. We therefore do not believe that these decisions compel a result contrary to the one we reach today.