838 F.2d 1325
 27 ERC 1307, 267 U.S.App.D.C. 375, 18
Envtl. L. Rep. 20,479
 STATE OF OHIO, Petitioner,
v.
U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., Respondents.
STATE OF COLORADO, Petitioner,
v.
U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., Respondents,
Gulf + Western Industries, Inc., Intervenor.
CHEMICAL MANUFACTURERS ASSOCIATION, Petitioner,
v.
Lee M. THOMAS, Administrator of the U.S. Environmental
Protection Agency, Respondent.
SCA SERVICES OF INDIANA, INC., Petitioner,
v.
U.S. ENVIRONMENTAL PROTECTION AGENCY, Respondent.
CPC INTERNATIONAL INC., et al., Petitioners,
v.
U.S. ENVIRONMENTAL PROTECTION AGENCY, Respondent.
EDISON ELECTRIC INSTITUTE, et al., Petitioners,
v.
U.S. ENVIRONMENTAL PROTECTION AGENCY, Respondent.
AMERICAN INSURANCE ASSOCIATION, Petitioner,
v.
U.S. ENVIRONMENTAL PROTECTION AGENCY, Respondent.
UNITED TECHNOLOGIES CORPORATION, Petitioner,
v.
U.S. ENVIRONMENTAL PROTECTION AGENCY, Respondent.
ASARCO, INC., Petitioner,
v.
U.S. ENVIRONMENTAL PROTECTION AGENCY, Respondent.
 Nos. 86-1096, 86-1116 to 86-1123.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 24, 1987.
Decided Feb. 12, 1988.
 
 John C. Martin, with whom Timothy A. Vanderver, Jr., Washington, D.C., was on the brief, for petitioner, United Technologies Corporation, arguing only on two "non-negotiable" issues.
 Elizabeth Ann Peterson, Dept. of Justice, with whom Roger J. Marzulla, Acting Asst. Atty. Gen., and Edward J. Shawaker and Susan L. Smith, Dept. of Justice, Washington, D.C., were on the brief, for respondent, E.P.A., arguing only on two "non-negotiable" issues. Carl Strass, Department of Justice, Washington, D.C., also entered an appearance for respondent, E.P.A.
 Before WALD, Chief Judge, SENTELLE, Circuit Judge, and GIBSON,* Senior Circuit Judge.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 Petitioner United Technologies Corporation (UTC) challenges rules promulgated by the Environmental Protection Agency (EPA) relating to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. Secs. 9601-9657 (1982 & Supp. III 1985), before its amendment by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499, 100 Stat. 1613 (SARA). In the challenged rulemaking, EPA in 1985 promulgated final regulations revising the National Oil and Hazardous Substances Pollution Contingency Plan, previously revised in 1982 pursuant to CERCLA Sec. 105, 42 U.S.C. Sec. 9605 (1982) (amended 1986). 50 Fed.Reg. 47,912 (1985) (codified at 40 C.F.R. Secs. 300.1-300.86 (1987)). UTC seeks to have us invalidate certain provisions in Sec. 300.25(d) of the regulations as being inconsistent with CERCLA and remand the regulations to EPA with instructions to eliminate the challenged provisions and promulgate regulations under CERCLA Sec. 112, 42 U.S.C.A. Sec. 9612 (Supp.1987). Finding no merit in this challenge, we deny the petition.
 
 I. STATUTORY AND REGULATORY BACKGROUND
 
 2
 In 1980, Congress enacted CERCLA to provide authority and funding for the cleanup of serious threats to public health and the environment resulting from disposal of hazardous waste.[1] In the provisions relevant to the instant case, CERCLA empowers EPA[2] to act or finance action to address such threats to the public and environment, 42 U.S.C.A. Sec. 9604 (Supp.1987), and created the fund known as the Superfund to finance response actions, 42 U.S.C. Sec. 9631 (1982) (amended 1986 and recodified at 26 U.S.C.A. Sec. 9507 (Supp.1987)). The statute authorizes EPA, whenever there is a release (or threatened release) of hazardous substances into the environment, to "act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance ... or take any other response measure consistent with the national contingency plan...." 42 U.S.C.A. Sec. 9604(a)(1) (Supp.1987); see generally 42 U.S.C.A. Sec. 9601 (Supp.1987) (defining "removal," "remedial action," "response," "national contingency plan," and other terms). CERCLA further directs EPA to establish procedures and standards for responding to releases of hazardous substances and to publish these in a revised national contingency plan (NCP); provides detailed guidance for the content of the NCP and the establishment of a national priorities list (NPL) of sites representing the greatest danger to public health, welfare, or the environment; and directs the EPA to determine and specify appropriate roles and responsibilities for private organizations and entities in effectuating the plan and responding to releases of hazardous substances. 42 U.S.C.A. Sec. 9605 (1983 & Supp.1987). CERCLA limits the use of the Fund to authorized purposes, including payment of governmental response costs and, more pertinently to the present petition, claims for "necessary response costs incurred by any other person as a result of carrying out the national contingency plan." 42 U.S.C.A. Sec. 9611(a)(2) (Supp.1987).
 
 
 3
 The EPA revised the NCP pursuant to CERCLA Sec. 105 in 1982, 47 Fed.Reg. 31,18 0 (1982), and again in 1985, 50 Fed.Reg. 47,912 (1985). The 1982 plan provided, inter alia:If any person other than the Federal government or a State or person operating under contract or cooperative agreement with the United States, takes response action and intends to seek reimbursement from the Fund, such actions to be in conformity with this Plan for purposes of Section 111(a)(2) of CERCLA may only be undertaken if such person notifies the Administrator of EPA or his/her designee prior to taking such action and receives prior approval to take such action.
 
 
 4
 40 C.F.R. Sec. 300.25(d) (1985). The 1985 revision to the NCP retained this requirement that reimbursable claims must have had such preauthorization, 40 C.F.R. Sec. 300.25(d)(1) (1987), and limited preauthorization of contemplated remedial actions to sites on the NPL. 40 C.F.R. Sec. 300.25(d)(2) (1987).
 
 
 5
 UTC now attacks both of these limitations as being "impediments" not contemplated by and inconsistent with the intent of Congress as expressed in the statutory scheme, both as originally enacted and as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499, 100 Stat. 1613 (SARA). UTC further complains that EPA has failed to promulgate regulations pursuant to Sec. 112 of CERCLA, 42 U.S.C.A. Sec. 9612 (Supp.1987), to regulate claims against the Fund by private responders.
 
 II. REVIEWABILITY
 
 6
 Before addressing the merits of the petition, we must deal with EPA's assertion that we have no jurisdiction to review this challenge. EPA asserts first that UTC's petition for review of the preauthorization requirement is untimely. The preauthorization requirement for private claims against the Superfund was promulgated first in 1982, and is brought forward in identical language and supplemented in the 1985 promulgation. Compare 40 C.F.R. Sec. 300.25(d) (1985) with 40 C.F.R. Sec. 300.25(d) (1987). Since UTC did not petition for review within 90 days of its first promulgation in 1982 as required by 42 U.S.C. Sec. 9613(a) (1982), EPA argues that the challenge to preauthorization is barred for lack of timeliness. In support of this proposition, EPA advances Natural Resources Defense Council v. Nuclear Regulatory Commission, 666 F.2d 595 (D.C.Cir.1981), in which we held that the corresponding 60-day period for seeking judicial review set forth in 28 U.S.C. Sec. 2344 (1982) is "jurisdictional in nature, and may not be enlarged or altered by the courts." 666 F.2d at 602 (footnote omitted).
 
 
 7
 Nonetheless, without weakening that general and appropriate rule, we have held that the period for seeking judicial review may be made to run anew when the agency in question by some new promulgation creates the opportunity for renewed comment and objection. Montana v. Clark, 749 F.2d 740 (D.C.Cir.1984), cert. denied, 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985). In Montana, as in the case at bar, the petitioner had had the opportunity to comment at the time of the original rulemaking but did not do so. Thereafter, as here, the agency in question republished proposed rules which contained the same provision as the earlier version, and review was sought. In that case, as in this, the agency argued that objections to the unchanged portion were untimely. In rejecting that argument in Montana, this Court determined that the time for seeking review ran anew from the time of re-promulgation because the agency "held out [the unchanged section] as a proposed regulation, offered an explanation for its language, solicited comments on its substance, and responded to the comments in promulgating the regulation in its final form." Id. at 744. In the present case, the agency requested comments only on new or changed provisions. 50 Fed.Reg. 5,862 (1985). Nonetheless, EPA explained the unchanged but republished portion of the regulation in the notice of proposed rulemaking in general policy terms, 50 Fed.Reg. 5,873 (1985), and responded to at least one comment aimed directly at the issue of preauthorization itself.[3] 50 Fed.Reg. 47,940 (1985). On these facts, it appears that it does no violence to the policies furthered by Natural Resources Defense Council to apply the exception of Montana v. Clark and hold that the petition is not barred with respect to the preauthorization requirement for lack of timeliness in objecting.
 
 
 8
 EPA further objects that review is barred for want of exhaustion of administrative remedies. "Courts have long required that a party seeking review of agency action exhaust its administrative remedies before seeking judicial review." Natural Resources Defense Council, Inc. v. U.S. EPA, 824 F.2d 1146, 1150 (D.C.Cir.1987). However, "courts have waived exhaustion if the agency 'has had an opportunity to consider the identical issues [presented to the court] ... but which were raised by other parties.' " Id. at 1151. Comparing the comment regarding preauthorization actually addressed by EPA in this case with the issues raised by UTC, we may be reaching the limits of this exception to the exhaustion doctrine to find that "the agency had 'the opportunity to consider' 'the very argument pressed' by the petitioner on judicial review." Id. (citation omitted). However, we do not quite go beyond the limit, as it appears in fairness to all that we should not dismiss the petition for review since "the EPA actually did consider the issue raised by the [petitioner] in its petition for review." Id.
 
 
 9
 Therefore, although we do not wish to encourage the arguably dilatory tactics of the petitioner here, we nonetheless find the substantive issues appropriately before us.
 
 III. THE VALIDITY OF THE REGULATIONS
 
 10
 UTC's attack on the regulations centers on two alleged defects in EPA's regulatory scheme. The challenged regulations read in pertinent part:
 
 
 11
 (d)(1) If any person other than the Federal government or a State or person operating under contract or cooperative agreement with the United States takes response action and intends to seek reimbursement from the Fund, such actions, to be in conformity with this Plan for purposes of section 111(a)(2) of CERCLA, may only be reimbursed if such person notifies the Administrator of EPA or his/her designee prior to taking such action and receives prior approval to take such action.
 
 
 12
 (2) The process of prior approval of Fund reimbursement requests is preauthorization. Fund preauthorization will be considered only for:
 
 
 13
 (i) Releases warranting a response action pursuant to Sec. 300.65 or Sec. 300.68;
 
 
 14
 (ii) CERCLA section 104(b) activities; and
 
 
 15
 (iii) Remedial actions at National Priorities List sites.
 
 
 16
 40 C.F.R. Sec. 300.25(d) (1987).
 
 
 17
 UTC objects to both the requirement for preauthorization itself contained in Sec. 300.25(d)(1) and the limitation contained in Sec. 300.25(d)(2)(iii) of preauthorization to sites appearing on the NPL. UTC argues that these two prerequisites to claims allowance[4] are inconsistent with congressional intent as expressed in the statute and legislative history and that the plain language of CERCLA does not permit EPA to "impede" private claims against the Fund in the manner prescribed by the NCP regulations.
 
 
 18
 UTC argues that the intent of Congress was to make the Fund available to private parties initiating cleanup activities to encourage the cleanup of hazardous waste facilities. UTC argues that the prerequisites to allowance of claims undermine this congressional intent and, therefore, EPA's promulgation of the regulations is not entitled to the deference ordinarily given to administrative agencies construing statutes administered by them. See generally Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984). UTC further argues that the regulatory scheme is contrary to the plain meaning of CERCLA in that Sec. 111(a)(2) provides that the Government shall use the Fund for "payment of any claim for necessary response costs incurred by any [nongovernmental] person as a result of carrying out the national contingency plan." 42 U.S.C.A. Sec. 9611(a)(2) (Supp.1987) (emphasis by petitioner). UTC then argues that the use of "any" without modifiers such as "preapproved" or "persons who have conducted responses at sites on the National Priorities List" leaves EPA without the authority to place such limitations by regulation.
 
 
 19
 In addition, UTC argues that both the pre- and post-SARA language of CERCLA Sec. 112 dealing with the rights of recovery of response costs by nongovernmental persons against responsible parties and against the Superfund emphasize the role of private party claims against the Fund and further disclose the implicit limitations on the authority of the EPA asserted by UTC. The 1980 or pre-SARA version of CERCLA Sec. 112(a) provides:
 
 
 20
 All claims which may be asserted against the Fund pursuant to section 9611 of this title shall be presented in the first instance to the owner, operator, or guarantor of the vessel or facility from which a hazardous substance has been released, if known to the claimant, and to any other person known to the claimant who may be liable under section 9607 of this title. In any case where the claim has not been satisfied within sixty days of presentation in accordance with this subsection, the claimant may elect to commence an action against such owner, operator, guarantor, or other person or to present the claim to the Fund for payment.
 
 
 21
 42 U.S.C. Sec. 9612(a) (1982) (amended 1986) (emphasis by petitioner). The SARA amendment restates the provision:
 
 
 22
 In any case where the claim has not been satisfied within 60 days of presentation in accordance with this subsection, the claimant may present the claim to the Fund for payment. No claim against the Fund may be approved or certified during the pendency of an action by the claimant in court to recover costs which are the subject of the claim.
 
 
 23
 42 U.S.C.A. Sec. 9612(a) (Supp.1987) (emphasis by petitioner). Thus, UTC argues, the amendment not only renews the emphasis on the policy UTC asserts, but also places claims against the Fund on the same basis as cleanup claims against responsible parties, for which neither preauthorization nor relation to a site on the NPL is required. Thus, UTC asserts, EPA's challenged regulations are not only inconsistent with congressional intent but with the express language of the statute.
 
 
 24
 UTC's reading unduly emphasizes limited portions of the statute. Section 111(a)(2) of CERCLA, after the portion quoted above, includes the limitation "Provided, however, That such costs must be approved under said [national contingency] plan and certified by the responsible Federal official." 42 U.S.C.A. Sec. 9611(a)(2) (Supp.1987) (emphasis in original). While this proviso is not restated in CERCLA Sec. 112, that section by its terms refers back to CERCLA Sec. 111 for definition of claims eligible for Fund reimbursement. 42 U.S.C.A. Sec. 9612(a) (Supp.1987). There is, therefore, no occasion for restating the proviso in the procedural statute which CERCLA Sec. 112 constitutes.
 
 
 25
 Further, although the policy of involving private parties in cleanup efforts is certainly a congressional policy evidence in CERCLA and SARA, it is only one aspect of a multi-faceted policy foundation for a complex and, it would seem, urgent statutory response to a problem of immense national importance. The most fundamental policy is not that private parties should be involved in the cleanup but that the cleanup of hazardous waste sites should occur. In the furtherance of that overriding policy, Congress has made it express that the claims by nongovernmental persons allowable against the Fund shall be those resulting from responses carrying out the NCP. 42 U.S.C.A. Sec. 9611(a)(2) (Supp.1987). Further, a reading of the full text of Sec. 111 of CERCLA in the context of CERCLA and SARA makes it abundantly plain that EPA is required to serve as the protector and distributor of scarce government resources devoted to this program of national priority. Not only are there obviously dollar limits to the Fund, but claims are "valid" only to the extent of available funds. 42 U.S.C. Sec. 9611(e)(1) (1982). So that, while UTC argues that the preauthorization procedure discourages private involvement in cleanup, it is at least as plausible that the requirement encourages private involvement since, without the preauthorization procedure, private persons would proceed at the peril of their claim ultimately being disapproved or being invalid by reason of the exhaustion of available funds.
 
 
 26
 Further, Sec. 105 of CERCLA directed EPA to "revise and republish" the NCP "to reflect and effectuate" CERCLA. 42 U.S.C.A. Sec. 9605(a) (1983 & Supp.1987). This section provides the EPA with broad rulemaking authority to craft the NCP, and the NCP is expressly the foundation for allowance of private claims under sections 111 and 112 of CERCLA. Thus EPA's position that the overriding goal of Congress was to accomplish the National Contingency Plan to rid the environment of this danger rather than to involve private parties in cleanup efforts is not only reasonable, but eminently so. Further, the EPA is required by the statute itself to compile the National Priority List of sites for remedial action in the NCP. 42 U.S.C.A. Sec. 9605(a)(8) (Supp.1987). Therefore, EPA can hardly be said to be acting unreasonably in using the NPL to screen sites toward the cleanup of which limited resources ought to be marshalled. Thus, the requirements that a private claim for response costs be preauthorized by EPA and relate to a site on the National Priority List are not "impediments" to the intended operation of the statute; rather, they reflect priorities for management of the Fund set out in CERCLA itself.
 
 
 27
 The courts have "long recognized that considerable weight should be afforded to an executive department's construction of a statutory scheme it is entrusted to administer." Chevron U.S.A., Inc., 467 U.S. at 844, 104 S.Ct. at 2782 (footnote omitted). When the choice of the agency in advancing a regulatory scheme " 'represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.' " Id. at 845, 104 S.Ct. at 2783 (quoting United States v. Shimer, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)). Nothing in this statute or its history makes it so appear in this case. So far as UTC's argument that CERCLA as amended by SARA places claims against the Fund on the same basis as actions against responsible parties, not only is there no indication of any clear congressional intent to do so, but such an intent is inherently unlikely, since different policy considerations apply in private actions as opposed to claims against the Fund. Obviously, the need to marshal scarce government resources necessarily underlying the administration of the Fund is uninvolved in the pursuit of private actions against responsible parties. Other courts have already noted that certain procedures for claims against the Fund are not applicable to actions against private parties. Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074 (1st Cir.1986); Idaho v. Howmet Turbine Component Co., 814 F.2d 1376 (9th Cir.1987); Walls v. Waste Resource Corp., 823 F.2d 977 (6th Cir.1987).
 
 
 28
 In light of the well-settled principles of administrative law set forth above and the absence of anything showing EPA's accommodation of policies to be unreasonable or inconsistent with the intent of Congress, we must deny the petition and let the regulations stand.[5]
 
 
 
 *
 Of the United States Court of Appeals for the Eighth Circuit, sitting by designation pursuant to 28 U.S.C. Sec. 294(d)
 
 
 [1]
 In 1986, Congress amended CERCLA substantially. Superfund Amendment and Reauthorization Act of 1986, Pub.L. No. 99-499, 100 Stat. 1613 (SARA). Except as expressly noted herein, the SARA amendments to CERCLA are not material to the issues addressed herein
 
 
 [2]
 The President delegated relevant portions of his authority and duties under CERCLA to EPA. Executive Order No. 12,316, 3 C.F.R. 168 (1982), reprinted in 42 U.S.C. Sec. 9615 at 1444-45 (1982)
 
 
 [3]
 EPA's explanation cites four comments concerning the preauthorization procedure. The second in order of these comments, stating that Sec. 300.25(d) cannot be used or understood without the promulgation of claims procedures under Sec. 112 of CERCLA, speaks to objections of the same nature as those of UTC. 50 Fed.Reg. 47,940 (1985)
 
 
 [4]
 "Claims" are distinguished from "actions" in the context of CERCLA. "A 'claim' consistently refers to a demand for reimbursement from the Superfund," with one distinct exception; " 'action,' however, refers strictly to judicial proceedings...." Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074, 1079 (1st Cir.1986)
 
 
 [5]
 UTC's argument that EPA has failed to promulgate regulations required by Sec. 112 of CERCLA, 42 U.S.C. Sec. 9612, concerning the forms and procedures for submission of claims, does nothing to invalidate the existing regulations. The present state of the record is that EPA has declared its ongoing intent to promulgate such regulations and it does not appear that UTC or any other party has petitioned for such a rulemaking. In any event, it does not appear that this complaint is properly addressed to this court since 42 U.S.C.A. Sec. 9613(b) (Supp.1987) places jurisdiction in the district courts. See United Technologies Corp. v. U.S. EPA, 821 F.2d 714, 720-21 (D.C.Cir.1987)