**UNITED STATES of America, People of the State of Illinois, Illinois Environmental Protection Agency, Village of Greenup, Illinois, a municipal corporation, County of Cumberland, Illinois, a municipal corporation, and County of Richland, Illinois, a municipal corporation, Plaintiffs,**

v.

**A & F MATERIALS COMPANY, INC., Kenneth C. Ault, Frank A. Jones, R.C.D. Chemicals, Inc., Genet Refining and Recovery, Alva Runyon, Melva Runyon, Kaye L. Ault, Aluminum Company of America, Inc., A–M International, McDonnell Douglas Corporation, Northern Petrochemical Company, Cam-Or, Inc., Petrolite Corporation, Cumberland Laboratories, Inc., and Velma Runyon, Defendants.**

Civ. No. 83–3123.

United States District Court, S.D. Illinois.

March 30, 1984.

See also, 578 F.Supp. 1249.

Robert Van Heuvelen, Land & Natural Resources Div., Dept. of Justice, Washington, D.C., Bruce Reppert, Robert Simpkins, Asst. U.S. Attys., East St. Louis, Ill., Jane Schulteis, U.S. Environmental Protection Agency, Robert Mueller, Asst. Atty. Gen., State of Ill., Environmental Central Div., Chicago, Ill., for plaintiffs.

John P. Lynch, Laurence H. Levine, Mark A. Stegemoeller, Latham, Watkins, Hedlund, Hunter & Lynch, Chicago, Ill., John W. Leskera, Dunham, Boman & Leskera, East St. Louis, Ill., Burton M. Greenberg, London, Greenberg & Pleban, St. Louis, Mo., Max W. Hittle, Jr., Krieg, Devault, Alexander & Capehart, Indianapolis, Ind., S. Richard Heymann, Eric B. Rothenberg, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendants.

### MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Before the Court is a Motion for Summary Judgment filed by defendant McDonnell Douglas Corporation (MDC). The government's action against MDC is based on the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.* CERCLA imposes liability on generators of hazardous wastes who arrange for the disposal or treatment of their waste by a third party and the waste is posing an actual or threatened harm to the environment. 42 U.S.C. § 9607(a)(3). The government claims MDC arranged for the disposal of spent aluminum etch caustic solution at A & F Material's site in Greenup, Illinois. MDC moves for judgment in its favor arguing the caustic solution is not a "waste," and that it did not "arrange for the disposal or treatment" of the caustic etch solution.

### I

The issues presented by the motion are framed by the following scenario. MDC is engaged in the production of jet aircraft at

its St. Louis, Missouri facility. The manufacturing process generates a spent caustic solution. On April 7, 1978, MDC issued an invitation to bid for up to 500,000 gallons of its caustic solution. On May 2, 1978, Mr. Kenneth Ault, acting as president of A & F Materials Company, submitted the highest bid at $.072 per gallon and was awarded the contract. From June 20, 1978 to November 20, 1978, A & F was invoiced on eleven occasions for seventeen shipments of caustic solution transported to A & F's Greenup facility at a total cost of approximately $6,000.

A & F Materials operated an oil reclamation process at the Greenup site. A & F would purchase waste oil primarily for ALCOA at two to four cents a gallon and treat it to obtain a portion of reusable oil. However, A & F's process yielded an acidic oil which had to be neutralized before it could be sold. MDC's caustic solution was used to neutralize the acidic oil.

## II

Section 9607(a)(3) of CERCLA imposes liability for the releases of hazardous substances into the environment on

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, ... of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, ....

Section 9601(14) of CERCLA defines "hazardous substance" as anything which under the Resource Conservation & Recovery Act (RCRA), 42 U.S.C. § 6903(5), is a "hazardous waste." MDC's first argument is that the spent caustic solution is not a "waste" since it was reused by A & F Materials. Secondly, MDC argues that even if the solution is a waste under the statute and regulations, it did not arrange for the disposal or treatment of the solution.

■ MDC has stipulated that the caustic solution is "hazardous" as defined by RCRA. The crucial definition of "waste" can be found at 40 C.F.R. § 261.2(b) which states:

An "other waste material" is any solid, liquid, semi-solid or contained gaseous material resulting from industrial, commercial, mining or agricultural operations, or from community activities which:

(1) Is discarded or being accumulated, stored or physically, chemically or biologically treated prior to being discarded; or

(2) Has served its original intended purpose and sometimes is discarded; or

(3) Is a manufacturing or mining byproduct and sometimes is discarded.

The government argues a material issue of fact remains in this matter as to whether MDC's spent caustic is a waste under subpart (2). The Court agrees. MDC does not dispute that the caustic solution had served its intended purpose, and there is conflicting evidence in the record as to whether the caustic was *sometimes* discarded. Officials at MDC testified via deposition that MDC pays to have other waste caustics hauled away. There is no evidence in the record which distinguishes these discarded caustics from the caustics sold to A & F Materials. Also after MDC stopped doing business with A & F, it had to pay to have spent caustic hauled away in January, 1979. Finally, it is possible to characterize MDC's current practice as giving away the spent caustic to anyone who would come and pick it up. Therefore, construing the evidence in the light most favorable to the government, the Court finds a material issue of fact remains as to whether MDC sometimes discarded the spent caustic solution.

■ MDC argues that the spent caustic is not a waste because the shipments to A & F were not discarded. This argument in effect ignores the word "sometimes" in the definition of waste. The Court finds that the definition of waste was intended to cover those hazardous materials which are of nominal commercial value and which were sometimes sold or reused and sometimes discarded. The Court cannot find as a matter of law that MDC's spent caustic

falls outside this expansive definition of waste. Therefore, the Court will assume for the purpose of the remaining issues in MDC's motion that it was a generator of a hazardous waste.

## III

Even if the spent caustic is a hazardous waste, MDC can prevail on its motion if it did not arrange for the disposal or treatment of the spent caustic. MDC argues CERCLA does not impose liability on parties who merely arrange for the sale of a hazardous substance.

Although initially appealing, the Court finds MDC's argument to be without merit. The Court is impressed with the broad language in § 9607(a)(3) which imposes liability on "any person who by contract, agreement, or *otherwise arranged for* disposal or treatment, of hazardous substances ... *at any facility ... containing such hazardous substances*" (emphasis added). The Court finds that MDC arranged to have its alleged waste disposed of at A & F's site in Greenup, Illinois, which was a facility containing hazardous substances. The fact that this arrangement involved A & F promising to pay MDC seven cents a gallon is irrelevant. Given the scope of the language "otherwise arranged" in § 9607(a)(3), the relevant inquiry is *who decided* to place the waste into the hands of a particular facility that contains hazardous wastes. In this case, it was MDC who decided to place its hazardous waste into the hands of A & F Materials to be used and disposed of at A & F's Greenup site. The Court finds that it is precisely this decision that CERCLA was intended to regulate. The fact that MDC's decision to give the waste to A & F was governed by the marketplace (*i.e.* the highest bidder) is of no consequence. Indeed CERCLA was enacted to insure that considerations far weightier than price dictate who is given the task of disposing of hazardous waste.

MDC relies on the unreported case of *United States v. Westinghouse Electric Corporation*, No. 83–9–C (S.D.Ind.1983) for the proposition that CERCLA does not impose liability upon one who makes a bona fide sale of a hazardous material. In *Westinghouse*, the government filed suit pursuant to CERCLA and RCRA and Westinghouse filed a third party complaint against Monsanto based in part on the same statutes. Monsanto manufactured polychlorinated biphenyls (PCB's) which Westinghouse utilized as a fluid in electrical equipment. The waste site at issue contained PCB's from Westinghouse's factory. The court held that Monsanto was not liable to Westinghouse because it did not contract for the disposal of the PCB's.

The *Westinghouse* case is clearly distinguishable from the present case and illustrates the limits to liability under CERCLA. First of all, Monsanto did not generate "waste" as defined above, because Monsanto manufactured the PCB's. Second, unlike MDC, Monsanto did not arrange for the disposal of PCB's at a facility containing hazardous wastes. Westinghouse is the party that arranged to have the appliances containing PCB's placed in the landfill. Thus, liability for releases under § 9607(a)(3) is not endless; it ends with that party who both owned the hazardous waste and made the crucial decision how it would be disposed of or treated, and by whom. Thus, because the Court cannot say as a matter of law that MDC's spent caustic is not a waste, and because MDC arranged for the spent caustic to be disposed of at A & F's facility in Greenup, Illinois, MDC is not entitled to summary judgment.

Accordingly, MDC's Motion for Summary Judgment is hereby DENIED.