872 F.2d 1373
 29 ERC 1529, 57 USLW 2632, 19 Envtl.
L. Rep. 21,038
 UNITED STATES of America, and State of Iowa, ex rel., Iowa
Department of Natural Resources, Appellees,
v.
ACETO AGRICULTURAL CHEMICALS CORP., The Dow Chemical
Company, Farnam Companies, Inc., Mobay
Corporation, and Velsicol Chemical
Corporation, Appellants,
CIBA-GEIGY Corporation, Mobil Oil Corporation, and Platte
Chemical Corporation,
UNITED STATES of America, Appellant,
and State of Iowa, ex rel., Iowa Department of Natural Resources,
v.
ACETO AGRICULTURAL CHEMICALS CORP., The Dow Chemical
Company, Farnam Companies, Inc., Mobay Corporation, Velsicol
Chemical Corporation, CIBA-GEIGY Corporation, Mobil Oil
Corporation, and Platte Chemical Corporation, Appellees,
UNITED STATES of America, and State of Iowa, ex rel., Iowa
Department of Natural Resources, Appellees,
v.
ACETO AGRICULTURAL CHEMICALS CORP., The Dow Chemical
Company, Farnam Companies, Inc., Mobay Corporation, Velsicol
Chemical Corporation, CIBA-GEIGY Corporation, Mobil Oil
Corporation, and Platte Chemical Corporation, Appellant,
UNITED STATES of America, and State of Iowa, ex rel., Iowa
Department of Natural Resources, Appellant,
v.
ACETO AGRICULTURAL CHEMICALS CORP., The Dow Chemical
Company, Farnam Companies, Inc., Mobay Corporation, Velsicol
Chemical Corporation, CIBA-GEIGY Corporation, Mobil Oil
Corporation, and Platte Chemical Corporation, Appellees.
 Nos. 88-1580 to 88-1583.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 18, 1988.
Decided April 25, 1989.
Rehearing and Rehearing En Banc Denied July 19, 1989.
 
 1
 Theodore L. Garrett, Washington, D.C., for appellants Aceto Agr. Chemicals Corp., The Dow Chemical Co., Farnam Companies, Inc., Mobay Corp., Velsicol Chemical Corp., CIBA-GEIGY Corp., and Mobil Oil Corp.
 
 
 2
 William F. Hargens, Omaha, Neb., for appellant Platte Chemical Corp.
 
 
 3
 Sarah P. Robinson, Washington, D.C., for appellee U.S. of America.
 
 
 4
 Before HEANEY* and BEAM, Circuit Judges, and LARSON,** Senior District Judge.
 
 
 5
 LARSON, Senior District Judge.
 
 
 6
 This case arises from efforts by the Environmental Protection Agency (EPA) and the State of Iowa to recover over $10 million dollars in response costs incurred in the clean up of a pesticide formulation facility operated by the Aidex Corporation in Mills County, Iowa. Aidex operated the facility from 1974 through 1981, when it was declared bankrupt. Investigations by the EPA in the early 1980s revealed a highly contaminated site. Hazardous substances were found in deteriorating containers, in the surface soil, in fauna samples, and in the shallow zone of the groundwater, threatening the source of irrigation and drinking water for area residents. Using funds from the "Hazardous Substance Superfund," see 26 U.S.C. Sec. 9507, the EPA, in cooperation with the State of Iowa, undertook various remedial actions to clean up the site.
 
 
 7
 The EPA now seeks to recover its response costs from eight pesticide manufacturers who did business with Aidex, in particular, who hired Aidex to formulate their technical grade pesticides into commercial grade pesticides. The complaint[1] alleges it is a common practice in the pesticide industry for manufacturers of active pesticide ingredients to contract with formulators such as Aidex to produce a commercial grade product which may then be sold to farmers and other consumers. Complaint paragraph 46. Formulators mix the manufacturer's active ingredients with inert materials using the specifications provided by the manufacturer. The resulting commercial grade product is then packaged by the formulator and either shipped back to the manufacturer or shipped directly to customers of the manufacturer. Complaint paragraphs 5-12, 46, 48.
 
 
 8
 The complaint alleges that although Aidex performed the actual mixing or formulation process, the defendants owned the technical grade pesticide, the work in process, and the commercial grade pesticide while the pesticide was in Aidex's possession. Complaint paragraphs 50, 68. The complaint also alleges the generation of pesticide-containing wastes through spills, cleaning of equipment, mixing and grinding operations, and production of batches which do not meet specifications is an "inherent" part of the formulation process. Complaint paragraph 47.
 
 
 9
 The United States and the State of Iowa allege all eight defendants are liable for the response costs incurred at the Aidex site pursuant to section 7003 of the Resource Conservation and Recovery Act (RCRA) because by virtue of their relationships with Aidex they "contributed to" the handling, storage, treatment, or disposal of hazardous wastes. Complaint paragraph 70. See 42 U.S.C. Sec. 6973(a). Plaintiffs further allege that six of the eight companies are liable under section 9607(a)(3) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), because by virtue of their relationships with Aidex they "arranged for" the disposal of hazardous substances. Complaint paragraph 52. See 42 U.S.C. Sec. 9607(a)(3).
 
 
 10
 The defendants have moved to dismiss the action under Fed.R.Civ.P. 12(b)(6), arguing that they contracted with Aidex for the processing of a valuable product, not the disposal of a waste, and that Aidex alone controlled the processes used in formulating their technical grade pesticides into commercial grade pesticides, as well as any waste disposal that resulted therefrom. The district court granted defendants' motion under RCRA, holding the absence of an allegation that defendants had authority to control how Aidex handled or disposed of the wastes precluded recovery under section 7003. The court denied the motion under CERCLA, however, holding that principles of common law in conjunction with the liberal construction required under CERCLA could support liability under section 9607(a)(3). 699 F.Supp. 1384.
 
 
 11
 We granted all parties leave to file interlocutory appeals, and the case is now before us for decision. For the reasons discussed below, we hold plaintiffs' allegations are sufficient to withstand defendants' motion to dismiss under both CERCLA and RCRA, and, accordingly, we affirm the district court's decision in part, reverse in part, and remand this case for further proceedings.
 
 I. STANDARD OF REVIEW
 
 12
 We review the district court's order under the well-established standards for deciding a motion to dismiss for failure to state a claim. See Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); May v. Commissioner of Internal Revenue, 752 F.2d 1301, 1303 (8th Cir.1985); Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir.1982).
 
 
 13
 The allegations of plaintiffs' complaint must be assumed to be true, and further, must be construed in their favor. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); May, 752 F.2d at 1303; Wright v. Anthony, 733 F.2d 575, 577 (8th Cir.1984). The issue is not whether plaintiffs will ultimately prevail, but rather whether they are entitled to offer evidence in support of their claims. Scheuer, 416 U.S. at 236, 94 S.Ct. at 1686. Thus, it is only in the "unusual case" where the complaint on its face reveals some insuperable bar to relief that a dismissal under Rule 12(b)(6) is warranted. Fusco, 676 F.2d at 334 (and authorities cited therein).
 
 II. THE STATUTES
 
 14
 The Resource Conservation and Recovery Act was initially enacted in 1976. Pub.L. No. 94-580, 1976 U.S.Code Cong. & Admin.News (90 Stat.) 2795. The Act represented an attempt by Congress to deal with problems posed by the general disposal of wastes in this country, as well as the particular problems associated with the disposal of hazardous substances. See generally H.R.Rep. No. 1491, Part I, 94th Cong., 2d Sess. 9-11, reprinted in 1976 U.S.Code Cong. & Admin.News 6238, 6246-49. The statute has been amended three times since enactment,[2] and provides what Congress has called a "prospective cradle-to-grave regulatory regime governing the movement of hazardous waste in our society." H.R.Rep. No. 1016, Part I, 96th Cong., 2d Sess. 17, reprinted in 1980 U.S.Code Cong. & Admin.News 6119, 6120.
 
 
 15
 The statute authorizes the EPA to identify hazardous wastes; to promulgate standards for transporters of hazardous wastes and operators of hazardous waste facilities; and to issue permits for the operation of hazardous waste disposal facilities. See 42 U.S.C. Secs. 6921-25. In addition, section 7003 of the statute, 42 U.S.C. Sec. 6973, authorizes suit when "the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment." Suit may be brought against "any person ... who has contributed or who is contributing to such handling, storage, treatment, transportation, or disposal to restrain such person [or] to order such person to take such other action as may be necessary, or both." 42 U.S.C. Sec. 6973(a).
 
 
 16
 Section 7003 has been interpreted to impose strict liability and to apply to persons who in the past "contributed to" the handling, storage, treatment, transportation, or disposal of solid or hazardous waste. United States v. Northeastern Pharmaceutical & Chemical Co., 810 F.2d 726, 737-42 (8th Cir.1986), cert. denied, --- U.S. ----, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) (NEPACCO ); United States v. Bliss, 667 F.Supp. 1298, 1313 (E.D.Mo.1987); United States v. Conservation Chemical Co., 619 F.Supp. 162, 198 (W.D.Mo.1985). All of the chemical wastes found at the Aidex site are alleged to be solid or hazardous wastes under RCRA.[3]
 
 
 17
 The Comprehensive Environmental Response, Compensation, and Liability Act was enacted in 1980 in an effort to eliminate unsafe hazardous waste sites. See H.R.Rep. No. 1016, Part I, 96th Cong., 2d Sess. 1, 17-22, reprinted in 1980 U.S.Code Cong. & Admin.News 6119, 6119-25. Amended in 1986 by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499, 1986 U.S.Code Cong. & Admin.News (100 Stat.) 1613, CERCLA authorizes the EPA to clean up hazardous waste sites itself and creates a "Superfund" with which to fund the EPA's activities. See 26 U.S.C. Sec. 9507; 42 U.S.C. Secs. 9604-05. See generally New York v. Shore Realty Corp., 759 F.2d 1032, 1040-41 (2d Cir.1985). The Superfund is financed through a combination of appropriations, industry taxes, and judgments received through legal actions to recover response costs from those responsible for the problems. See 26 U.S.C. Sec. 9507(b). The money used by the EPA to clean up the Aidex site was taken from this "Superfund," and the clean up was conducted in accordance with standards adopted under the CERCLA program.
 
 
 18
 CERCLA places the ultimate responsibility for clean up on "those responsible for problems caused by the disposal of chemical poisons," Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074, 1081 (1st Cir.1986), by authorizing suit against four classes of parties: (1) the owners and operators of a facility at which there is a release or threatened release of hazardous substances; (2) the owners or operators of such a facility any time in the past when hazardous substances were disposed of; (3) any person who "arranged for" the treatment or disposal of a hazardous substance at the facility; and (4) the persons who transported hazardous substances to the facility. 42 U.S.C. Sec. 9607(a). Most courts have held CERCLA imposes strict liability and joint and several liability. See, e.g., NEPACCO, 810 F.2d at 732 n. 3; Shore Realty Corp., 759 F.2d at 1042; United States v. Chem-Dyne Corp., 572 F.Supp. 802, 808-10 (S.D.Ohio 1983). Only a limited number of statutorily-prescribed defenses are available. See 42 U.S.C. Sec. 9607(b); United States v. Hooker Chemicals & Plastics Corp., 680 F.Supp. 546, 549 (W.D.N.Y.1988); Bliss, 667 F.Supp. at 1304; United States v. Ward, 618 F.Supp. 884, 893 (E.D.N.C.1985).
 
 
 19
 CERCLA's sweep, while broad, is more limited than RCRA's in terms of the substances it covers. Tailored particularly to hazardous waste sites, CERCLA liability may attach only to those responsible for "hazardous substances" as defined in the statute. See 42 U.S.C. Sec. 9601(14). Three of the pesticide wastes found at the Aidex site are not alleged to be "hazardous substances" under CERCLA.[4] For this reason, plaintiffs have sued only six of the eight defendants under CERCLA.
 
 III. ALLEGATIONS OF THE COMPLAINT
 
 20
 The United States and the State of Iowa rely upon the same core allegations to support their claims under both CERCLA and RCRA. As to each of the six CERCLA defendants, plaintiffs allege they by contract, agreement, or otherwise, "arranged for" the disposal of a hazardous substance when they contracted with Aidex to formulate their technical grade pesticides into commercial grade pesticides.[5] Plaintiffs allege defendants owned the technical grade pesticide alleged to be a "hazardous substance" under CERCLA, the work in process, and the resulting commercial grade product; that is, the defendant retained ownership of its pesticide throughout the formulation and packaging process. Complaint paragraphs 5-10, 50. Moreover, plaintiffs allege that the generation of wastes containing "hazardous substances" is an "inherent" part of the formulation process through spills, cleaning of equipment, mixing and grinding operations, production of batches which do not meet specifications, and other means. Complaint paragraph 47. Finally, plaintiffs allege Aidex in fact generated such wastes and disposed of them on the Aidex site. Complaint paragraph 51.
 
 
 21
 With respect to each of the eight RCRA defendants,[6] plaintiffs allege the handling, storage, treatment, transportation, or disposal of the pesticide-containing wastes may have presented, prior to the United States' abatement activities, "an imminent and substantial endangerment to health or the environment." Complaint paragraph 65. See 42 U.S.C. Sec. 6973(a). Furthermore, plaintiffs allege that by reason of their arrangements with Aidex, each defendant "contributed to" the handling, storage, or disposal of the hazardous or solid wastes found at the site. Complaint paragraphs 5-12, 70.
 
 IV. LIABILITY UNDER CERCLA
 
 22
 To establish a prima facie case of liability under CERCLA, plaintiffs must establish(1) the Aidex site is a "facility;"
 
 
 23
 (2) a "release" or "threatened release" of a "hazardous substance" from the Aidex site has occurred;
 
 
 24
 (3) the release or threatened release has caused the United States to incur response costs; and
 
 
 25
 (4) the defendants fall within at least one of the four classes of responsible persons described in section 9607(a).
 
 
 26
 Bliss, 667 F.Supp. at 1304; Conservation Chemical Co., 619 F.Supp. at 184.
 
 
 27
 The complaint adequately alleges facts which would establish the first three elements, and defendants do not challenge these allegations for purposes of this appeal. At issue in this appeal is whether the defendants "arranged for" the disposal of hazardous substances under the Act, and thus fall within the class of responsible persons described in section 9607(a)(3). In finding plaintiffs' allegations sufficient to hold defendants liable as responsible persons, the district court relied on the principle that CERCLA should be broadly interpreted and took guidance from common law rules regarding vicarious liability. In particular, the district court found that defendants could be liable under common law for the abnormally dangerous activities of Aidex acting as an independent contractor, see Restatement (Second) of Torts Sec. 427A (1965), holding that the common law was an appropriate source of guidance when the statutory language and legislative history of CERCLA prove inconclusive.
 
 
 28
 The six CERCLA defendants challenge the district court's decision on appeal, arguing the court's "hazardous activity" analogy is inapplicable to the facts of this case, and that Aidex, not they, "owned the hazardous waste and made the crucial decision how it would be disposed of or treated, and by whom." United States v. A & F Materials Co., 582 F.Supp. 842, 845 (S.D.Ill.1984). They argue Aidex was hired "to formulate, not to dispose," and that imposition of liability under CERCLA on these facts would lead to "limitless" liability. Finally, defendants assert the plain meaning of the statute requires an intent to dispose of some waste, or, at the very least, the authority to control the disposal process, and that neither are alleged by plaintiffs here.
 
 
 29
 The plaintiffs counter that defendants' ownership of the technical grade pesticide, the work in process, and the commercial grade product establishes the requisite authority to control Aidex's operations. Plaintiffs argue that because the generation of pesticide-containing wastes is inherent in the pesticide formulation process, Aidex could not formulate defendants' pesticides without wasting and disposing of some portion of them. Thus, plaintiffs argue, defendants could not have hired Aidex to formulate their pesticides without also "arranging for" the disposal of the waste.
 
 
 30
 We begin our analysis with the language of the CERCLA statute. Section 9607(a)(3) provides in relevant part:
 
 
 31
 Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--
 
 
 32
 ....
 
 
 33
 (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances ...
 
 
 34
 ... from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
 
 
 35
 (A) all costs of removal or remedial action incurred by the United States Government or a State ... not inconsistent with the national contingency plan.
 
 
 36
 42 U.S.C. Sec. 9607(a).
 
 
 37
 "Arrange for" is not defined by the statute, but "disposal" is. "Disposal" includes "the discharge, deposit, injection, dumping, spilling, leaking, or placing" of any hazardous substance such that the substance "may enter the environment." 42 U.S.C. Sec. 6903(3). See 42 U.S.C. Sec. 9601(29).
 
 
 38
 Citing dictionary definitions of the word "arrange,"[7] defendants argue they can be liable under section 9607(a)(3) only if they intended to dispose of a waste. Defendants argue further the complaint alleges only an intent to arrange for formulation of a valuable product, and no intent to arrange for the disposal of a waste can be inferred from these allegations. We reject defendants' narrow reading of both the complaint and the statute.
 
 
 39
 Congress used broad language in providing for liability for persons who "by contract, agreement, or otherwise arranged for " the disposal of hazardous substances. See A & F Materials, 582 F.Supp. at 845. While the legislative history of CERCLA sheds little light on the intended meaning of this phrase,[8] courts have concluded that a liberal judicial interpretation is consistent with CERCLA's "overwhelmingly remedial" statutory scheme. NEPACCO, 810 F.2d at 733. See Dedham Water Co., 805 F.2d at 1081; Conservation Chemical Co., 619 F.Supp. at 192; United States v. Mottolo, 605 F.Supp. 898, 902 (D.N.H.1985).
 
 
 40
 Both the First and Second Circuits have declared they "will not interpret section 9607(a) in any way that apparently frustrates the statute's goals, in the absence of a specific congressional intent otherwise." Dedham Water Co., 805 F.2d at 1081; New York v. Shore Realty Corp., 759 F.2d 1032, 1045 (2d Cir.1985). We thus interpret the phrase "otherwise arranged for" in view of the two essential purposes of CERCLA:
 
 
 41
 First, Congress intended that the federal government be immediately given the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous waste disposal. Second, Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created.
 
 
 42
 Dedham Water Co., 805 F.2d at 1081 (citing United States v. Reilly Tar & Chemical Corp., 546 F.Supp. 1100, 1112 (D.Minn.1982)).
 
 
 43
 The second goal--that those responsible should pay for clean up--would be thwarted by acceptance of defendants' argument that the allegations in plaintiffs' complaint do not sufficiently allege they "arranged for" disposal of their hazardous substances. While defendants characterize their relationship with Aidex as pertaining solely to formulation of a useful product, courts have not hesitated to look beyond defendants' characterizations to determine whether a transaction in fact involves an arrangement for the disposal of a hazardous substance. In Conservation Chemical, for example, the court found defendants' sale of lime slurry and fly ash byproducts to neutralize and treat other hazardous substances at a hazardous waste site could constitute "arranging for disposal" of the lime slurry and fly ash. 619 F.Supp. at 237-41. Denying defendants' motions for summary judgment, the court reasoned that defendants contracted with the owner of the site "for deposit or placement" of their hazardous substances on the site, and thus could be found liable under the statute. Id. at 241.
 
 
 44
 Other courts have imposed CERCLA liability where defendants sought to characterize their arrangement with another party who disposed of their hazardous substances as a "sale" rather than a "disposal." See New York v. General Electric Co., 592 F.Supp. 291, 297 (N.D.N.Y.1984); A & F Materials, 582 F.Supp. at 845. In the G.E. case, General Electric had sold used transformer oil to a dragstrip, which used the oil for dust control. The oil contained PCBs and other hazardous substances, and the State of New York sought to recover costs for clean up of the site from G.E. G.E., 592 F.Supp. at 293-94. In denying G.E.'s motion to dismiss, the court emphasized G.E. allegedly arranged for the dragstrip to take away its used transformer oil with "knowledge or imputed knowledge" that the oil would be deposited on the land surrounding the dragstrip. Id. at 297. Stating that CERCLA liability could not be "facilely circumvented" by characterizing arrangements as "sales," the G.E. Court cited CERCLA's legislative history: "[P]ersons cannot escape liability by 'contracting away' their responsibility or alleging that the incident was caused by the act or omission of a third party." Id. at 297 (and authorities cited therein). See A & F Materials, 582 F.Supp. at 845.
 
 
 45
 Courts have also held defendants "arranged for" disposal of wastes at a particular site even when defendants did not know the substances would be deposited at that site or in fact believed they would be deposited elsewhere. See Ward, 618 F.Supp. at 895; State of Missouri v. Independent Petrochemical Corp., 610 F.Supp. 4, 5 (E.D.Mo.1985); United States v. Wade, 577 F.Supp. 1326, 1333 n. 3 (E.D.Pa.1983).
 
 
 46
 Courts have, however, refused to impose liability where a "useful" substance is sold to another party, who then incorporates it into a product, which is later disposed of. E.g., Florida Power & Light Co. v. Allis Chalmers Corp., 27 Env't Rep.Cas. (BNA) 1558 (S.D.Fla.1988); United States v. Westinghouse Electric Corp., 22 Env't Rep.Cas. 1230 (BNA) (S.D.Ind.1983). See also Edward Hines Lumber Co. v. Vulcan Materials Co., 685 F.Supp. 651, 654-57 (N.D.Ill.), aff'd on other grounds, 861 F.2d 155 (7th Cir.1988). Defendants attempt to analogize the present case to those cited above, but the analogy fails. Not only is there no transfer of ownership of the hazardous substances in this case (defendants retain ownership throughout), but the activity undertaken by Aidex is significantly different from the activity undertaken by, for example, Florida Power & Light. Aidex is performing a process on products owned by defendants for defendants' benefit and at their direction; waste is generated and disposed of contemporaneously with the process. Florida Power & Light, on the other hand, purchased electrical transformers containing mineral oil with PCBs from defendant Allis Chalmers, used the transformers for approximately 40 years, and then made the decision to dispose of them at the site in question. Florida Power & Light, 27 Env't Rep.Cas. (BNA) at 1558-60. Allis Chalmers was thus far more removed from the disposal than the defendants are in this case.
 
 
 47
 Defendants nonetheless contend they should escape liability because they had no authority to control Aidex's operations, and our NEPACCO decision states "[i]t is the authority to control the handling and disposal of hazardous substances that is critical under the statutory scheme." NEPACCO, 810 F.2d at 743. In NEPACCO, we were confronted with the argument that only individuals who owned or possessed hazardous substances could be liable under CERCLA. We rejected that notion and imposed liability, in addition, on those who had the authority to control the disposal, even without ownership or possession. Id. at 743-44. Defendants in this case, of course, actually owned the hazardous substances, as well as the work in process. NEPACCO does not mandate dismissal of plaintiffs' complaint under these circumstances.
 
 
 48
 Finally, defendants' contention that the district court erred in looking to the common law must also be rejected. As the Seventh Circuit has recently held, the sponsors of CERCLA anticipated that the common law would provide guidance in interpreting CERCLA. Edward Hines Lumber Co. v. Vulcan Materials Co., 861 F.2d 155, 157 (7th Cir.1988). See Colorado v. ASARCO, Inc., 608 F.Supp. 1484, 1488-89 (D.Colo.1985) (citing legislative history); United States v. Chem-Dyne, 572 F.Supp. 802, 808 (S.D.Ohio 1983). While the Edward Hines Court refused to find a company was an "operator" of a facility when the common law did not provide for liability, 861 F.2d at 157-58, in this case, the common law supports the imposition of liability on defendants. See Restatement (Second) of Torts Secs. 413, 416, 427 and 427A (1965).
 
 
 49
 For all of the reasons discussed above, accepting plaintiffs' allegations in this case as true and giving them the benefit of all reasonable inferences therefrom, we agree with the district court that the complaint states a claim upon which relief can be granted under CERCLA. Any other decision, under the circumstances of this case, would allow defendants to simply "close their eyes" to the method of disposal of their hazardous substances, a result contrary to the policies underlying CERCLA. See Ward, 618 F.Supp. at 895. Accordingly, we affirm the court's judgment denying defendants' motion to dismiss for failure to state a claim upon which relief can be granted.
 
 V. LIABILITY UNDER RCRA
 
 50
 Plaintiffs' theory of liability under RCRA is really no different from their theory under CERCLA, although the statutory requirements are somewhat different under each statute. RCRA section 7003, 42 U.S.C. Sec. 6973, provides in relevant part:
 
 
 51
 Notwithstanding any other provision of this chapter, upon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court against any person (including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility) who has contributed or who is contributing to such handling, storage, treatment, transportation or disposal to restrain such person from such handling, storage, treatment, transportation, or disposal, to order such person to take such other action as may be necessary, or both.
 
 
 52
 42 U.S.C. Sec. 6973(a).
 
 
 53
 RCRA thus imposes liability on any person who "contributed" or who "is contributing" to the disposal of solid or hazardous waste, 42 U.S.C. Sec. 6973, rather than on those who "arrange for" the disposal of hazardous substances. See 42 U.S.C. Sec. 9607(a)(3). RCRA also authorizes suit upon receipt of evidence of "an imminent and substantial endangerment to health or the environment," 42 U.S.C. Sec. 6973(a), rather than after a "release" or "threatened release" of a hazardous substance. See 42 U.S.C. Sec. 9607(a).[9]
 
 
 54
 Defendants make the initial argument on appeal that because the EPA cleaned up the Aidex site before it brought suit, there was (and is) no "imminent and substantial endangerment" as is required under the Act. We agree with the district court, however, that RCRA's "imminent and substantial endangerment" language does not require the EPA to file and prosecute its RCRA action while the endangerment exists. As the district court aptly noted, in the context of a reimbursement action, this would be an "absurd and unnecessary" requirement. The endangerment language is plainly intended by Congress to limit the reach of RCRA to sites where the potential for harm is great. See United States v. Reilly Tar & Chemical Corp., 546 F.Supp. 1100, 1109-10 (D.Minn.1982).
 
 
 55
 The express language of the statute permits suit as soon as the United States receives information indicating a potential endangerment. The purpose of the statute is to "give broad authority to the courts to grant all relief necessary to ensure complete protection of the public health and the environment." Conservation Chemical Co., 619 F.Supp. at 199. See NEPACCO, 810 F.2d at 737-41, 745-46; Reilly Tar, 546 F.Supp. at 1109-10. The limitation urged by defendants would defeat this purpose. The allegations of the complaint in this case, if true, place the Aidex site within the "imminent and substantial endangerment" category prior to the EPA's clean up efforts. These allegations are sufficient to authorize suit under section 6973.
 
 
 56
 Defendants also contend, and the district court found, that their relationships with Aidex were not sufficient to establish they "contributed to" Aidex's disposal of wastes arising from the formulation process. In reaching its conclusion, the district court construed RCRA narrowly, holding that the lack of an express allegation that defendants had authority to control how Aidex disposed of the waste from the formulation process was fatal to plaintiffs' claims under section 6973.
 
 
 57
 We disagree with the district court's conclusion that RCRA should be narrowly construed. The relevant legislative history supports a broad, rather than a narrow, construction of the phrase "contributed to." Although RCRA's contemporaneous legislative history is not very helpful, see NEPACCO, 810 F.2d at 738, subsequent reports which reviewed the statute after enactment expressly state that "contributing to" is to be liberally construed. H.R.Rep. No. IFC 31, 96th Cong., 1st Sess. 31 (1979) (the Eckhardt Report); S.Rep. No. 172, 96th Cong., 2d Sess. 5, reprinted in 1980 U.S.Code Cong. & Admin.News 5019, 5023. See United States v. Waste Industries, Inc., 734 F.2d 159, 166 (4th Cir.1984). More importantly, like CERCLA, RCRA is a remedial statute, which should be liberally construed. See United States v. Price, 688 F.2d 204, 211, 213-14 (3d Cir.1982). See also Conservation Chemical Co., 619 F.Supp. at 199; Reilly Tar, 546 F.Supp. at 1108-10.
 
 
 58
 We also disagree with the district court's conclusion that an explicit allegation of "control" is required. We find the complaint alleges sufficient facts from which a trier of fact could infer defendants "contributed to" Aidex's disposal of wastes. Defendants contracted with Aidex to formulate their technical grade pesticides; they retained ownership of the pesticide throughout the process; and inherent in the process is the generation of wastes. Defendants supplied the specifications for their commercial grade products to Aidex; it may reasonably be inferred that they had authority to control the way in which the pesticides were formulated, as well as any waste disposal.
 
 
 59
 Defendants attempt to analogize this case to United States v. Westinghouse Electric Corp., 22 Env't Rep.Cas. (BNA) 1230 (S.D.Ind.1983), in which the court rejected both CERCLA and RCRA claims brought by Westinghouse against Monsanto. Unlike Monsanto, however, defendants in this case did not sell their technical grade pesticide to Aidex; they retained ownership throughout the formulation process.[10] Moreover, Aidex was not manufacturing a product for its own use; it was formulating defendants' pesticide products for them. Cf. id. at 1233. We thus find the Westinghouse case distinguishable from the facts alleged here.
 
 
 60
 Although the phrase "contributing to" is not defined by the statute, its plain meaning is "to have a share in any act or effect." Webster's Third New International Dictionary 496 (1961). "To have a share in" is arguably less involvement than might be required by the plain meaning of the phrase "to arrange": "to make plans, prepare," id. at 120, and we have already held the complaint sufficiently alleges defendants "arranged for" the disposal of hazardous substances under CERCLA section 9607(a)(3).
 
 
 61
 Defendants have cited no persuasive reason or authority for distinguishing between the phrase "arranging for" under CERCLA and the phrase "contributing to" under RCRA in the context of this case. Accordingly, for the same reasons we held plaintiffs' allegations were sufficient to state a claim under CERCLA, we now hold plaintiffs have sufficiently alleged defendants "contributed to" the disposal of solid or hazardous wastes under RCRA.
 
 VI. CONCLUSION
 
 62
 Plaintiffs alleged defendants contracted with Aidex for the formulation of their hazardous substances--technical grade pesticides--into commercial grade pesticides. Plaintiffs further alleged that inherent in the formulation process was the generation and disposal of wastes containing defendants' hazardous substances. Finally, plaintiffs alleged that defendants retained ownership of their hazardous substances throughout the formulation process. We hold these allegations are sufficient to establish--for purposes of defeating defendants' motion to dismiss--that defendants "arranged for" the disposal of hazardous substances under CERCLA, 42 U.S.C. Sec. 9607(a)(3), and "contributed to" the disposal of hazardous wastes under RCRA, 42 U.S.C. Sec. 6973(a). We affirm the judgment of the district court in part, reverse in part, and remand for further proceedings consistent with this opinion.
 
 
 
 *
 The HONORABLE GERALD W. HEANEY assumed senior status January 1, 1989
 
 
 **
 The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The United States filed the initial complaint in this case on February 26, 1987, on behalf of the Administrator of the EPA. The State of Iowa later requested leave to intervene, which was granted, and the State of Iowa filed its complaint in intervention on April 29, 1987. In its complaint, the state seeks to recover its share of the response costs both under federal law and under state law. The state has paid ten percent of the remedial action costs incurred by the EPA at the Aidex site, and is also responsible for all costs of future site maintenance for up to thirty years. See State Complaint paragraph 30; 42 U.S.C. Sec. 9604(c). Because the state's complaint with regard to issues of federal law is substantially the same as the United States', this opinion will simply refer to the complaint of the United States. The parties have agreed to defer consideration of Iowa's state law claims, and no issue of state law was presented either to the district court or to this Court
 
 
 [2]
 See Quiet Communities Act of 1978, Pub.L. No. 95-609, Sec. 7(q), 1978 U.S.Code Cong. & Admin.News (92 Stat.) 3079, 3083; Solid Waste Disposal Act Amendments of 1980, Pub.L. No. 96-482, Sec. 25, 1980 U.S.Code Cong. & Admin.News (94 Stat.) 2334, 2348; Hazardous and Solid Waste Amendments of 1984, Pub.L. No. 98-616, Sec. 402, 1984 U.S.Code Cong. & Admin.News (98 Stat.) 3221, 3271
 
 
 [3]
 "Solid waste" includes any "garbage, refuse, sludge ... and other discarded material...." 42 U.S.C. Sec. 6903(27). "Hazardous waste" is defined as a solid waste or combination of solid wastes which may increase mortality or illness or pose a health or environmental hazard. Id. Sec. 6903(5)
 
 
 [4]
 The technical grade pesticides Atrazine, Ethoprop, and Prometon, manufactured by defendants Ciba-Geigy Corp. and Mobil Oil Corp., are not alleged to be "hazardous substances" under CERCLA. See Complaint paragraphs 11, 12, 40
 
 
 [5]
 The Complaint alleges Aceto Agricultural Chemicals Corporation contracted with Aidex to formulate Technical Phorate into an insecticide, Phorate 15G (Complaint paragraph 5); Dow Chemical Company contracted with Aidex to formulate Technical Dursban M (active ingredient chlorpyrifos) into an insecticide, Dursban 2.5G (Complaint paragraph 6); Farnam Companies, Inc. contracted with Aidex to formulate products containing lindane, methoxychlor, and toxaphene (Complaint paragraph 7); Mobay Chemical Corporation contracted with Aidex to formulate Technical Di-Syston (active ingredient Disulfoton) into DI-SYSTON 15% (Complaint paragraph 8); Platte Chemical Company contracted with Aidex to formulate Technical Phorate into Phorate 15G (Complaint paragraph 9); and Velsicol Chemical Corporation contracted with Aidex to formulate products containing Chlordane and Heptachlor (Complaint paragraph 10)
 
 
 [6]
 In addition to the allegations relating to the six defendants sued under CERCLA, see note 5, supra, the Complaint alleges that Ciba-Geigy Corporation contracted with Aidex to formulate an herbicide known as Conquer LVK from Prometon and a second herbicide known as Aatrex 4L from Atrazine (Complaint paragraph 11); and Mobil Oil Corporation contracted with Aidex to formulate a nematicide-insecticide known as MOCAP 10G from Ethoprop (Complaint paragraph 12)
 
 
 [7]
 Defendants contend the word "arrange" means "to come to an agreement" or "to make plans, prepare." See Webster's Third New International Dictionary 120 (1961)
 
 
 [8]
 Although the 96th Congress had considered numerous proposals concerning liability and compensation for environmental pollution, the bill which ultimately became law was hurriedly put together by a bipartisan leadership group of Senators (the "Stafford-Randolph Compromise"), and was passed after very limited debate by a lame duck Congress. See New York v. Shore Realty Corp., 759 F.2d 1032, 1039-40 (2d Cir.1985); Grad, A Legislative History of the Comprehensive Environmental Response, Compensation and Liability ("Superfund") Act of 1980, 8 Colum.J.Envtl.L. 1, 1 (1982). See also Developments, Toxic Waste Litigation, 99 Harv.L.Rev. 1458, 1465 n. 1 (1986)
 Of the three bills which were reported out of committee, only two contained provisions analogous to the "arranged for" provision in section 9607(a)(3). H.R. 7020, the "Hazardous Waste Containment Act," was in the form of an amendment to RCRA and proposed to regulate inactive hazardous waste sites, extending liability to "any person who caused or contributed to" a release or threatened release of hazardous substances. H.R. 7020, 96th Cong., 2d Sess. (1980), cited in Shore Realty Corp., 759 F.2d at 1044. See Grad, supra, 8 Colum.J.Envtl.L. at 4-6; Comment, "Arranging for Disposal" Under CERCLA: When is a Generator Liable?, 15 Envtl.L.Rep. 10160, 10163 (1985).
 S. 1480, the "Environmental Emergency Response Act," was the most far-reaching of the Superfund bills. As originally introduced, it extended liability to "any person who caused or contributed to a release of hazardous substances." A Senate Committee on Environmental and Public Works working paper later changed this language to the "any person who by contract, agreement or otherwise arranged for" language which was retained in the bill as reported out, retained in the Stafford-Randolph compromise bill, and then incorporated into the Act itself. See S. 1480, 96th Cong., 2d Sess. (1980); Staff of Senate Comm. on Env't and Public Works, Working Paper No. 2, 96th Cong., 2d Sess. (1980) cited in Comment, supra, 15 Envtl.L.Rep. at 10163. The reasons for Congress' preference for "arranged for" over "caused or contributed to" are "not easy to divine," although elimination of the concept of "cause" is consistent with the imposition of strict liability. See Comment, supra, 15 Envtl.L.Rep. at 10163. See generally Shore Realty Corp., 759 F.2d at 1039-40; United States v. Wade, 577 F.Supp. 1326, 1333-34 (E.D.Pa.1983).
 
 
 [9]
 The elements of a prima facie case of liability under RCRA section 7003, 42 U.S.C. Sec. 6973, are:
 (1) conditions which present or may present an imminent and substantial endangerment;
 (2) the endangerment stems from the handling, storage, treatment, transportation, or disposal of a solid or hazardous waste; and
 (3) defendants have contributed to or are contributing to such handling, storage, treatment, transportation, or disposal.
 United States v. Bliss, 667 F.Supp. 1298, 1313 (E.D.Mo.1987).
 
 
 [10]
 Monsanto had sold Westinghouse PCBs, which Westinghouse then used in its manufacture of electrical equipment. As a result of the manufacturing process, Westinghouse generated waste containing hazardous materials, and the United States had sued Westinghouse to recover response costs for cleaning up the site used by Westinghouse to dispose of the waste. Westinghouse sought to hold Monsanto responsible for any liability it might have to the United States. See Westinghouse Electric Corp., 22 Env't Rep.Cas. at 1231-32